(SPACE BELOW FOR FILING STAMP ONLY)

**ERIC H. SCHWEITZER #179776**
**ANNIE L. DAVIDIAN #252644**
**SCHWEITZER & DAVIDIAN, PC**
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Tel: 559-322-1500
Fax: 559-322-1551

ATTORNEY FOR: **RALPH CONTRERAS, Jr.**

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**\* \* \* \* \* \* \* \***

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 25-cr-00119-KES-PEG** |
| **Plaintiff,** | |
| **v.** | **DEFENDANT'S SENTENCING MEMORANDUM: POINTS IN MITIGATION** |
| **RALPH CONTRERAS, Jr.,** | |
| **Defendant.** | **DATE: July 13, 2026**<br>**TIME: 9:30 a.m.**<br>**DEPT: 6 (KES)** |

TO THE HONORABLE KIRK E. SHERIFF, U.S. DISTRICT JUDGE, AND TO THE UNITED STATES ATTORNEY, BY AND THROUGH HER REPRESENTATIVE, JOSEPH BARTON, ASSISTANT U.S. ATTORNEY:

**INTRODUCTION**

Defendant, RALPH CONTRERAS, Jr., through undersigned counsel, respectfully submits this memorandum in mitigation and requests that the Court impose a sentence significantly below the advisory guideline range through application of a downward departure pursuant to U.S.S.G. § 5K2.13 or, alternatively, a substantial downward variance pursuant to 18 U.S.C. § 3553(a). Mr. Contreras's offense conduct, while serious and for which he accepts full responsibility, occurred against a backdrop of severe, untreated psychological trauma directly attributable to

1

his nearly seventeen years of service to the State of California as a correctional officer and sergeant with the California Department of Corrections and Rehabilitation (CDCR).

The facts established in the Presentence Investigation Report demonstrate that Mr. CONTRERAS suffers from severe depression, anxiety, and post-traumatic stress disorder (PTSD) stemming from prolonged exposure to violence, death, and the dehumanizing environment of California's prison system. These service-related psychological injuries significantly diminished his capacity to control his behavior and contributed directly to the commission of the instant offense. The Court has both the authority and the discretion to recognize these extraordinary mitigating circumstances through a substantial reduction in the otherwise-applicable sentence.

## FACTUAL BACKGROUND

### 1. Mr. CONTRERAS's Service to the State of California

RALPH CONTRERAS, Jr., dedicated nearly seventeen years of his life to public service as a correctional officer and sergeant with the California Department of Corrections and Rehabilitation. He graduated from the CDCR academy in 2008 and worked his way through the ranks, ultimately serving as an internal affairs sergeant. His service was exemplary: he became a certified use of force instructor and worked extensive overtime hours to meet his child support obligations and provide for his family. Mr. CONTRERAS's employment with CDCR was not merely a job—it was a calling that demanded he place himself in harm's way daily. He worked at the Central California Women's Facility State Prison in Chowchilla, California, where he was responsible for maintaining

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

2

security and order in an inherently dangerous environment. Character references submitted to the Court uniformly describe him as dependable, hardworking, thoughtful, and responsible. His colleague Derrick Mendes attested that Mr. CONTRERAS never displayed any red flags during their professional relationship and that he trusted him around youth, including his own children.

**2.    The Psychological Toll of Correctional Service The psychological impact of Mr. CONTRERAS's service cannot be overstated**

During his presentence interview, he disclosed that his work environment at CDCR caused him to witness people being "killed" at his former place of employment. Treatment records from Enhance Health Group LLC reflect that Mr. CONTRERAS reported seeing individuals killed while working for CDCR and that he had been in verbally and emotionally abusive relationships. Mr. CONTRERAS developed severe psychological symptoms that went untreated for years. His mother, Tracy Contreras, explained that her son "started to experience night terrors due to his work environment, financial stressors, and relationship problems" as early as 2015 or 2016. He experienced suicidal ideations during that period and again in January 2025. Despite recognizing his deteriorating mental health, Mr. CONTRERAS "tried to go through the counseling from CDCR but he couldn't get in." His fiancée, Vanessa Belaski, emphasized this point: "CDCR failed him, as much as Ralph gave to that place, they failed him. Ralph tried to go through the counseling from CDCR but he couldn't get in." The failure of CDCR to provide accessible mental health services to its employees left Mr. CONTRERAS without the professional support he desperately needed. Ms. Belaski noted: "I strongly believe if

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

that hadn't have happened, Ralph wouldn't be in the position he is in now. If CDCR would have helped him, his addiction wouldn't have taken over him." Mr. CONTRERAS himself explained that he became "increasingly withdrawn, isolating himself from family and friends" and developed mechanisms to cope with "what was going on" at work by disconnecting from his emotional reality.

### 3. Formal Diagnoses and Treatment Following his arrest, Mr. CONTRERAS voluntarily enrolled in inpatient treatment at Enhance Health Group LLC in Orange, California, in January 2025

During his approximately four-month stay at the facility, he was formally diagnosed with major depressive disorder, recurrent, moderate, and other sexual dysfunctions not due to a substance or known physiological condition. Treatment records document diagnoses of "severe depression, anxiety, and post-traumatic stress disorders (PTSD)." Mental health professionals at Enhance Health Group observed significant changes in Mr. CONTRERAS during treatment. Records reflect that he "disclosed to the counselors that he has been in verbally and emotionally abusive relationships" and "reported seeing people get 'killed' before at his former place of employment (CDCR)." Program participants described him in terms that reflected genuine transformation, observations that have been submitted to the Court for consideration. Mr. CONTRERAS was prescribed Trazodone 50 mg, Naltrexone 50 mg, Prozac 20 mg, and Hydroxyzine 50-100 mg, medications he continues to take daily. He successfully completed the inpatient program in May 2025 and has continued mental health counseling and medication monitoring services through Barrie Lamonte in Sacramento, California, while

4

under Pretrial Services supervision. Treatment records reflect that he "has attended counseling appointments consistently and is focused during his sessions" and "appears to be motivated to develop greater self-awareness in order to lead a healthier and more productive life."

### 4. The Causal Connection Between Service-Related Trauma and the Offense

The connection between Mr. CONTRERAS's service-related psychological injuries and his offense conduct is direct and substantial. During his presentence interview, he stated that he "had no motivation to commit the offense" but rather was "dealing with significant emotional and mental health struggles, including depression, anxiety, post-traumatic stress disorder, and severe sleep deprivation." He was "fearful of losing his job because he did not want to face 'what was going on.'" Over time, as his untreated psychological symptoms worsened, he became "increasingly withdrawn" and developed maladaptive coping mechanisms, including the compulsive use of pornography as an escape from his psychological pain. Mr. CONTRERAS's statement to the Court captures this progression: "As to how he got to this point and what motivated him to commit the crime, the defendant stated he had no motivation to commit the offense. He explained he was dealing with significant emotional and mental health struggles, including depression, anxiety, post-traumatic stress disorder, and severe sleep deprivation." His mother similarly observed: "Like many people balancing demanding careers and family obligations, Ralph struggled at times with stress and relationships. He worked long hours to meet his financial

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

responsibilities, including child support, and I could see the toll that pressure was taking on him." Character references uniformly describe a man whose life was consumed by his work obligations. Ms. Belaski noted that "his career came first, he had to work the OT to cover the amount of child support he was ordered to pay." She observed that while Mr. CONTRERAS "wanted so desperately to be a better father, son, uncle, step father and a better partner, but his demons were still at bay." The psychological toll of his service, combined with the inability to access treatment through CDCR, created a perfect storm of untreated mental illness that manifested in the offense conduct.

Significantly, Mr. CONTRERAS has made extraordinary efforts toward rehabilitation. He enrolled in treatment immediately upon release on bail, demonstrating a recognition that his psychological issues required professional intervention. Ms. Belaski observed: "When Ralph was arrested, he was brought to our home to speak to me. Not once did Ralph deny what he was accused of, he just kept apologizing and said he'd do his best to explain." The next day after posting bail, "Ralph got on the phone and sought help. Not because he was in trouble but because it was time he put himself first, something he never has done." Minister Julie Marsh, who worked with Mr. CONTRERAS during his treatment, attested: "Ralph C. Jr. has done all of the things I would expect to see in a changed person." She noted that he "attends church regularly and takes part in the service, attends Bible study and adds to the discussion" and "couldn't wait to get back to work to provide for his family and was grateful to work, even though he earns a fraction of what he is used to." Mr.

6

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

CONTRERAS was baptized in May 2025, representing a fundamental spiritual transformation.

### 5. Post-Offense Conduct and Rehabilitation Since his arrest, Mr. CONTRERAS has demonstrated genuine remorse and commitment to rehabilitation

He has maintained satisfactory compliance with all conditions of his pretrial release, including home detention and location monitoring. He entered outpatient mental health treatment on July 23, 2025, and has "actively participated in treatment as required." He has tested negative for all drug tests administered by Pretrial Services. Mr. CONTRERAS obtained full-time employment with U.S. Cold Storage in November 2025 and part-time employment with Tallac Lounge in Sacramento beginning November 28, 2025. His supervisor at U.S. Cold Storage, Raymond DeOllos, described him as "reliable," noting that he "has yet to miss a day unless requested off" and "is hard working and willing to put in overtime any time he has been asked to." Mr. DeOllos emphasized that despite working for the company for less than a year, Mr. CONTRERAS "has already been promoted once and is always inquiring about further promotions." Character references submitted by family members and community members paint a consistent picture of a man who has genuinely transformed himself. His grandmother, Diane Furlong, age 83, wrote: "Since finding his faith, Ralph has grown even more. He attends church every Sunday, reads scripture regularly, and treats others—especially elderly women at church—with kindness, respect, and compassion." Sharon Boran, a Sunday school teacher and family friend, observed that Mr. CONTRERAS "has demonstrated initiative to help in various situations" and "has approached everything

7

with dedication, optimism and concern for others." Mr. CONTRERAS's stepson, Rashaun J. Belaski, wrote movingly of the positive changes he has observed: "His character has changed so much from that day he was arrested and paraded around my block. He has opened up to me more often, talking about his feelings, his addictions, and what's happened in his career in CDCR, encouraging me to find help for myself or even talk to someone, and to not bottle it up and get an addiction as he did." Rashaun emphasized that Mr. CONTRERAS "got his 90-day chip, marking three months of sobriety, which I was so proud of because it meant he was changing." In his own statement to the Court, Mr. CONTRERAS acknowledged that he "would not change the situation that he is in because it got him out of a 'dark place.'" He feels "rejuvenated and thankful" and "recognizes that he made a serious mistake, accepts responsibility for his actions, and is committed to moving forward with his life." He emphasized his faith journey: "Over the past year, I have also turned to my faith as a source of strength and guidance. In moments when I felt overwhelmed, I found encouragement in the belief that change is possible through faith and perseverance." He reflected on Scripture, noting: "I have tried to live this out by committing not only to belief, but to daily effort in my recovery and personal growth."

///

///

///

///

///

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

8

**LEGAL ARGUMENT**

**I.**

**THE COURT HAS AUTHORITY TO GRANT A SUBSTANTIAL DOWNWARD DEPARTURE OR VARIANCE BASED ON MR. CONTRERAS'S DIMINISHED CAPACITY AND SERVICE-RELATED TRAUMA**

The United States Sentencing Guidelines and federal sentencing statutes provide the Court with broad discretion to impose a sentence below the advisory guideline range when warranted by the defendant's history and characteristics. Two separate but complementary legal frameworks authorize a substantial reduction in Mr. CONTRERAS's sentence: (1) a downward departure pursuant to U.S.S.G. § 5K2.13 for significantly reduced mental capacity, and (2) a downward variance pursuant to 18 U.S.C. § 3553(a) based on the totality of the sentencing factors, including his service-related psychological injuries and extraordinary rehabilitation efforts.

**II.**

**LEGAL AND FACTUAL UNDERPINNING FOR DOWNWARD DEPARTURE OR VARIANCE**

 **A. Downward Departure Under U.S.S.G. § 5K2.13 Is Warranted Based on Mr. CONTRERAS's Significantly Reduced Mental Capacity Caused by Service-Related PTSD**

The Sentencing Guidelines expressly authorize departure when "the defendant committed the offense while suffering from a significantly reduced mental capacity." United States v. Menyweather (9th Cir. 2006) 447 F.3d 625. Section 5K2.13 identifies diminished capacity as "a factor that may not have been considered adequately by the Sentencing Commission in promulgating the Guidelines—that is, as an encouraged factor for departure." (*Ibid*.) The policy statement defines significantly reduced mental capacity as "a significantly impaired ability to

9

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

(A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." (*Ibid*.) Post-traumatic stress disorder has been recognized as a valid basis for departure under § 5K2.13 when "the ailment distorted [the defendant's] reasoning, interfered with [his] ability to make considered decisions, and contributed to the commission of the offense in some way." United States v. Menyweather (9th Cir. 2006) 447 F.3d 625, United States v. Menyweather (9th Cir. 2005) 431 F.3d 692. The Ninth Circuit has held that "post-traumatic stress disorder can be the basis for a departure under § 5K2.13" when these conditions are met. (*Ibid*.), United States v. Cantu (9th Cir. 1993) 12 F.3d 1506.  The district court's assessment that a defendant's PTSD constitutes diminished capacity is reviewed for abuse of discretion—a highly deferential standard. United States v. Menyweather (9th Cir. 2006) 447 F.3d 625.  Mr. CONTRERAS's case presents a compelling application of this departure provision. The evidence establishes that he suffers from chronic PTSD, severe depression, and anxiety directly attributable to his prolonged exposure to violence and trauma during his seventeen years of service with CDCR. Treatment records from Enhance Health Group LLC document that he "reported seeing people get 'killed' before at his former place of employment." His mother corroborated that he "started to experience night terrors due to his work environment" beginning in 2015 or 2016 and experienced suicidal ideations during that period. The causal connection between Mr. CONTRERAS's PTSD and his offense conduct is established through his own statements and

10

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

the observations of mental health professionals. During his presentence interview, he explained that he committed the offense while "dealing with significant emotional and mental health struggles, including depression, anxiety, post-traumatic stress disorder, and severe sleep deprivation" and that he became "increasingly withdrawn, isolating himself from family and friends." He developed maladaptive coping mechanisms—specifically, compulsive use of pornography—as a means of escaping the psychological pain caused by his untreated service-related trauma. The Ninth Circuit's decision in United States v. Cantu is instructive. United States v. Cantu (9th Cir. 1993) 12 F.3d 1506.  There, the court addressed whether PTSD could constitute diminished capacity under § 5K2.13, holding that "the question before us is not whether [the defendant] is mentally or emotionally disturbed" but "whether post-traumatic stress disorder, an emotional illness, may cause reduced mental capacity for the purpose of the guideline." (*Ibid*.)  The court concluded that PTSD satisfies the guideline standard when it "distorted [the defendant's] reasoning, interfered with [her] ability to make considered decisions," and "contributed to the commission of the offense in some way." (*Ibid*.) Mr. CONTRERAS's PTSD clearly meets this standard. His psychological condition distorted his reasoning by causing him to withdraw from healthy relationships and seek escape through compulsive behavior. It interfered with his ability to make considered decisions by creating severe sleep deprivation, anxiety, and depression that impaired his judgment. And it directly contributed to the offense by driving him to seek relief from his psychological pain through

11

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

maladaptive coping mechanisms that ultimately manifested in criminal conduct. Significantly, the Guidelines recognize that mental and emotional conditions may warrant departure "in the extraordinary case." (*Ibid*.), United States v. Leandre (1998) 328 U.S. App. D.C. 95, 132 F.3d 796.  Mr. CONTRERAS's circumstances are extraordinary. He is not a career criminal with a long history of misconduct; he is a decorated public servant with no prior criminal history who developed severe, untreated PTSD as a direct result of his service to the State of California. He sought treatment through CDCR's employee assistance program but was unable to access the care he needed. His psychological deterioration occurred not in a vacuum but as the direct consequence of prolonged exposure to the traumatic environment of California's prison system—exposure he endured in service to his community. The policy underlying § 5K2.13 recognizes that defendants whose criminal conduct stems from mental illness merit different treatment than defendants who act with full capacity. As the Ninth Circuit observed in Cantu, the guideline's purpose is to account for cases where the defendant's mental condition "distorted [his] reasoning" and "interfered with [his] ability to make considered decisions." United States v. Cantu (9th Cir. 1993) 12 F.3d 1506.  Mr. CONTRERAS's service-related PTSD did exactly that, and the Court should recognize this extraordinary mitigating factor through a substantial downward departure. Moreover, the final prong of § 5K2.13 counsels that departure should not be granted if "the defendant's criminal history indicates a need for incarceration to protect the public." United States v. Leandre (1998) 328 U.S. App. D.C. 95, 132 F.3d 796.

Mr. CONTRERAS has no criminal history whatsoever. His conduct in this case was an aberration driven by untreated psychological trauma, not a pattern of criminality.  The Presentence Report concludes that he "has maintained satisfactory compliance with all conditions of his pretrial release," including home detention, mental health treatment, drug testing, and full-time employment. There is no evidence suggesting that public safety requires a lengthy term of incarceration.

### B.    A Substantial Downward Variance Is Warranted Under 18 U.S.C. § 3553(a)

Based on the Totality of the Sentencing Factors Even if the Court declines to grant a formal departure under § 5K2.13, a substantial downward variance is independently warranted pursuant to 18 U.S.C. § 3553(a). Following United States v. Booker, the Sentencing Guidelines are advisory, and the Court must consider "the history and characteristics of the defendant" in fashioning "a sentence sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 USCS § 3553, United States v. Reyes (9th Cir. 2021) 18 F.4th 1130.  District courts "are not only permitted, but required, to consider 'the history and characteristics of the defendant'" and may base a variance on "a defendant's age, medical condition, prior military service, family obligations, entrepreneurial spirit, etc." United States v. Chase (8th Cir. 2009) 560 F.3d 828.  The Ninth Circuit has clarified that factors forming the basis for a variance need not satisfy the rigorous requirements for a Guidelines departure. In United States v. DeRusse, the court held: "The case law relied on by [the government] is distinguishable because it all relates to

13

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

departures under the guidelines, not variances from the guidelines. A variance can be imposed without compliance with the rigorous requirements for departures." United States v. DeRusse (10th Cir. 2017) 859 F.3d 1232.  Thus, even if Mr. CONTRERAS's PTSD does not satisfy every technical element of § 5K2.13, the Court retains full discretion to account for his service-related psychological injuries, his extraordinary rehabilitation, and his lack of criminal history through a variance. Under § 3553(a), the Court must consider: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 USCS § 3553 Each of these factors supports a substantial variance in this case.

C.    The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

While the offense itself is serious, the nature and circumstances surrounding it are highly mitigating. Mr. CONTRERAS did not produce the images at issue; he possessed and distributed existing material in the context of a compulsive addiction driven by untreated PTSD. His conduct was not motivated by predatory intent toward children but rather by a maladaptive coping mechanism developed in response to severe psychological trauma.

14

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

More importantly, Mr. CONTRERAS's history and characteristics are extraordinary. He dedicated seventeen years of his life to public service as a correctional officer and sergeant with CDCR, rising to the position of internal affairs sergeant and becoming a certified use of force instructor. He worked extensive overtime hours to meet his child support obligations and provide for his family. Character references uniformly describe him as dependable, hardworking, and responsible. He has no prior criminal history of any kind. Mr. CONTRERAS's psychological deterioration was a direct consequence of his service. He witnessed people being killed at CDCR and developed night terrors, suicidal ideations, severe depression, anxiety, and PTSD. He attempted to access mental health services through CDCR but was unable to obtain treatment. His offense conduct occurred during the darkest period of his untreated psychological crisis—a crisis caused by his service to the State of California. Since his arrest, Mr. CONTRERAS has taken extraordinary steps toward rehabilitation. He voluntarily enrolled in inpatient treatment at Enhance Health Group LLC immediately after posting bail, where he was formally diagnosed and treated for major depressive disorder and PTSD. He successfully completed the program and has continued mental health counseling while under Pretrial Services supervision. He has maintained full compliance with all conditions of pretrial release, including home detention, location monitoring, and drug testing. He obtained full-time employment with U.S. Cold Storage and part-time employment with Tallac Lounge, where he has been promoted and is described as reliable and hardworking. Mr. CONTRERAS has also undergone a

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

profound spiritual transformation. He was baptized in May 2025 and now attends church regularly, participates in Bible study, and has given his testimony regarding his life changes. Minister Julie Marsh, who worked with him during his treatment, attested that he "has done all of the things I would expect to see in a changed person" and emphasized that she has "seen it all" in her thirty-plus years as a Christian, noting that Mr. CONTRERAS's transformation reflects "a right heart, doing the right things to be an overcomer in this life."

### D. The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment

A substantial variance in this case would not diminish the seriousness of the offense or fail to promote respect for the law. To the contrary, imposing a sentence that accounts for Mr. CONTRERAS's service-related psychological injuries and extraordinary rehabilitation demonstrates that the federal sentencing system recognizes the complexity of human behavior and the mitigating role of mental illness. Mr. CONTRERAS has already suffered substantial consequences. He lost his career with CDCR, a position he held for seventeen years and in which he earned approximately $225,000 annually. He has been subject to home detention and location monitoring since July 2025. He has endured the public shame and humiliation associated with his arrest and prosecution. He has been separated from his children, a consequence he describes as deeply painful. Most significantly, Mr. CONTRERAS has confronted his psychological demons head-on through intensive treatment and ongoing counseling. He has acknowledged his conduct, accepted responsibility, and committed

16

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

himself to a life of recovery and faith. A sentence that recognizes these extraordinary efforts promotes respect for the law by demonstrating that the criminal justice system values rehabilitation and accounts for the role of untreated mental illness in criminal conduct.

### E.    The Need to Afford Adequate Deterrence and Protect the Public

The deterrence and public protection rationales carry less weight in this case than in a typical child pornography prosecution. Mr. CONTRERAS's offense conduct was not the product of a calculated decision by a rational actor; it was the manifestation of untreated PTSD, severe depression, and compulsive behavior developed as a maladaptive coping mechanism. General deterrence is less effective when the defendant's conduct stems from mental illness rather than rational calculation. Moreover, the risk of recidivism is minimal. Mr. CONTRERAS has no prior criminal history. He has successfully completed intensive inpatient treatment and continues outpatient counseling and medication management. He has maintained full compliance with all conditions of pretrial release for more than a year. Treatment records reflect that he is "focused during his sessions" and "appears to be motivated to develop greater self-awareness in order to lead a healthier and more productive life." Character references uniformly attest that Mr. CONTRERAS poses no danger to the community. His supervisor describes him as reliable and hardworking. His family members and community members describe him as kind, respectful, and transformed. His stepson, who lived with him during the period surrounding his arrest, never felt

17

unsafe in his presence and continues to view him as a positive father figure. The Ninth Circuit's decision in United States v. Munoz-Nava illustrates the proper application of the § 3553(a) factors in cases involving defendants with strong personal histories and low recidivism risk. United States v. Munoz-Nava (10th Cir. 2008) 524 F.3d 1137.  There, the district court imposed a substantial variance based on the defendant's "long and consistent work history, community support, and lack of a felony criminal record," concluding that "[t]he court has received a large number of letters from community members, family members, and from defendant's employers, in support of the defendant, and attesting to his responsibility, his work ethic." (*Ibid*.)  The court also noted that "based upon the defendant's history and character, it is very unlikely that he will reoffend, and therefore, the public is not at risk." *(Id*. at p. 1143).  Mr. CONTRERAS's case presents an even stronger basis for variance. Unlike the defendant in Munoz-Nava, Mr. CONTRERAS has not only a strong work history but also seventeen years of exemplary public service that directly caused his psychological deterioration. He has taken extraordinary steps toward rehabilitation, including voluntary enrollment in inpatient treatment, ongoing counseling, and a profound spiritual transformation. The likelihood of recidivism is minimal, and public safety does not require a lengthy term of incarceration.

**F.   The Need to Provide the Defendant with Needed Medical Care and Correctional Treatment in the Most Effective Manner**

This factor strongly favors a reduced sentence. Mr. CONTRERAS has already begun the process of addressing his

18

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

psychological issues through intensive treatment and ongoing counseling. He is taking prescribed medications for depression, anxiety, and PTSD.  He has demonstrated genuine commitment to his recovery by attending counseling appointments consistently and actively participating in his treatment. A lengthy term of incarceration would disrupt this progress and potentially exacerbate Mr. CONTRERAS's psychological condition. The Bureau of Prisons, while capable of providing mental health services, cannot replicate the intensive, specialized treatment Mr. CONTRERAS has been receiving in the community. His treatment records reflect that he is making significant strides in developing healthier coping mechanisms and self-awareness. Continuing this trajectory in a community-based setting, under supervision, would better serve the goal of providing effective correctional treatment than a lengthy term of incarceration. Moreover, Mr. CONTRERAS's spiritual transformation is a critical component of his rehabilitation. He attends church regularly, participates in Bible study, and has developed a support network within his faith community. These resources have been instrumental in his recovery and would be unavailable or significantly limited in a prison setting. The most effective manner of providing Mr. CONTRERAS with needed correctional treatment is through a sentence that allows him to continue his community-based mental health care and spiritual growth while under supervised release.

///

///

///

19

**G.    The Recommended Guideline Range Does Not Adequately Account for Mr. CONTRERAS's Extraordinary Mitigating Circumstances**

The Presentence Report calculates a total offense level of 37 and a criminal history category of I, resulting in an advisory guideline range of 210 to 240 months (capped by the statutory maximum of 20 years). While this calculation accurately applies the Sentencing Guidelines' mechanical formula, it fails to account for the extraordinary mitigating circumstances present in Mr. CONTRERAS's case—circumstances that warrant a substantial departure or variance.  The Sentencing Commission did not adequately consider cases involving defendants whose offense conduct stems directly from service-related PTSD acquired through years of public service in a dangerous, traumatic environment. The Guidelines' framework for child pornography offenses focuses primarily on the nature and scope of the materials possessed and distributed, with limited consideration of the defendant's mental state or the circumstances that led to the offense. While this approach may be appropriate for the typical defendant, it produces an unreasonably harsh result when applied to a defendant like Mr. CONTRERAS, whose conduct was driven by untreated psychological trauma directly attributable to his seventeen years of service to the State of California. The Ninth Circuit has recognized that the Sentencing Commission "intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes." United States v. Fairless (9th Cir. 1992) 975 F.2d 664, 666.  When the court "finds an atypical case, one to which a particular guideline linguistically applies but where conduct

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

significantly differs from the norm, the court may consider whether a departure is warranted." (*Id.* at p. 666-667).  Mr. CONTRERAS's case falls well outside the heartland of child pornography offenses contemplated by the Guidelines. Mr. CONTRERAS is not a predator who seeks sexual gratification from exploiting children. He is a decorated public servant with no criminal history who developed severe PTSD, depression, and anxiety as a direct result of his service to the State of California. He witnessed traumatic violence during his seventeen years with CDCR, developed night terrors and suicidal ideations, and sought treatment through his employer but was unable to access care. His offense conduct occurred during the darkest period of his untreated psychological crisis and was driven by a compulsive addiction that developed as a maladaptive coping mechanism. Since his arrest, Mr. CONTRERAS has taken extraordinary steps toward rehabilitation. He voluntarily enrolled in intensive inpatient treatment, where he was formally diagnosed and treated for his psychological conditions. He successfully completed the program and has continued outpatient counseling and medication management. He has maintained full compliance with all conditions of pretrial release for more than a year, including home detention, location monitoring, mental health treatment, and drug testing. He has obtained full-time employment and has been promoted within less than a year. He has undergone a profound spiritual transformation, participating regularly in church, Bible study, and faith-based recovery programs. These extraordinary circumstances place Mr. CONTRERAS's case far outside the heartland of cases contemplated by the

21

Guidelines. The advisory range of 210 to 240 months does not account for his lack of criminal history, his years of exemplary public service, the causal connection between his service-related psychological trauma and his offense conduct, his inability to access treatment through CDCR, or his extraordinary rehabilitation efforts. A substantial departure or variance is necessary to ensure that the sentence imposed is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 USCS § 3553

### H. The Court Should Consider Mr. CONTRERAS's Service-Related Psychological Injuries as a Substantial Mitigating Factor

Federal courts have long recognized that prior military or public service may warrant a reduced sentence, particularly when the defendant's service resulted in psychological trauma that contributed to the offense conduct. While Mr. CONTRERAS's service was with a state correctional agency rather than the military, the principle applies with equal force. He placed himself in harm's way daily for seventeen years, witnessed traumatic violence, and developed severe PTSD as a direct result—the same psychological injuries that afflict many military veterans who serve in combat zones. The Eighth Circuit's decision in United States v. Chase illustrates the proper consideration of service-related factors in sentencing. United States v. Chase (8th Cir. 2009) 560 F.3d 828. There, the court held that "factors such as a defendant's age, medical condition, prior military service, family obligations, entrepreneurial spirit, etc., can form the bases for a variance even though they would not justify a departure." (*Id. at p.* 831). The court further

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

22

noted that "factors that have already been taken into account in calculating the advisory guideline range, such as a defendant's lack of criminal history, can nevertheless form the basis of a variance." *Id.* Mr. CONTRERAS's seventeen years of service to the State of California as a correctional officer and sergeant merit substantial weight in the sentencing calculus. Correctional work is inherently dangerous and psychologically taxing. Officers are exposed to violence, threats, and the constant stress of maintaining security in an environment populated by individuals convicted of serious crimes. Mr. CONTRERAS did not merely serve in this capacity—he excelled, rising to the position of internal affairs sergeant and becoming a certified use of force instructor. The psychological toll of this service is well-documented in Mr. CONTRERAS's case. Treatment records from Enhance Health Group LLC establish that he "reported seeing people get 'killed' before at his former place of employment (CDCR)." His mother attested that he "started to experience night terrors due to his work environment" as early as 2015 or 2016. By the time of his arrest, he was suffering from severe depression, anxiety, PTSD, and severe sleep deprivation—all directly attributable to his prolonged exposure to the traumatic environment of California's prison system. Significantly, Mr. CONTRERAS attempted to access mental health services through CDCR's employee assistance program but was unable to obtain treatment. His fiancée, Vanessa Belaski, explained: "Ralph tried to go through the counseling from CDCR but he couldn't get in. CDCR failed him, as much as Ralph gave to that place, they failed him." His mother corroborated this account: "At one point, he

23

attempted to seek help through the State of California's Employee Assistance Program, but unfortunately, he did not receive a response." His godmother similarly noted:  "He reached out through the State of California Employee Assistance Program, showing that he recognized something was wrong and that he wanted support. Unfortunately, it does not appear that he received the help he needed at that time." The causal connection between Mr. CONTRERAS's service-related psychological injuries and his offense conduct is direct and substantial. During his presentence interview, he explained that he committed the offense while "dealing with significant emotional and mental health struggles, including depression, anxiety, post-traumatic stress disorder, and severe sleep deprivation" and that he became "increasingly withdrawn, isolating himself from family and friends." He developed compulsive use of pornography as a maladaptive coping mechanism to escape his psychological pain—pain caused by his service to the State of California. The Court should recognize Mr. CONTRERAS's service and the psychological injuries he sustained as a substantial mitigating factor warranting a significant reduction in sentence. He did not develop PTSD through reckless personal choices; he acquired it through years of dedicated public service in one of the most dangerous and psychologically demanding professions. The State of California benefitted from his service for seventeen years but failed to provide him with the mental health care he needed when his psychological condition deteriorated. A sentence that accounts for these extraordinary circumstances would properly balance the

///

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

24

seriousness of the offense with the unique factors that led to its commission.

### I.   Mr. CONTRERAS's Extraordinary Rehabilitation Efforts Support a Reduced Sentence

Federal sentencing law recognizes that a defendant's post-offense rehabilitation efforts are relevant to the sentencing determination. In United States v. Menyweather, the Ninth Circuit held that district courts have discretion to consider "factors listed under § 3553(a)" and to "weigh a multitude of mitigating and aggravating factors that existed at the time of mandatory Guidelines sentencing, but were deemed not ordinarily relevant, such as age, education and vocational skills, mental and emotional conditions, employment record and family ties and responsibilities." United States v. Rangel (9th Cir. 2012) 697 F.3d 795, 803.  Mr. CONTRERAS's rehabilitation efforts are extraordinary and demonstrate genuine transformation. Immediately upon posting bail on January 2, 2025, he sought help, enrolling in inpatient treatment at Enhance Health Group LLC the very next day. Ms. Belaski observed: "When Ralph was arrested, he was brought to our home to speak to me. Not once did Ralph deny what he was accused of, he just kept apologizing and said he'd do his best to explain. The next day Ralph got on the phone and sought help. Not because he was in trouble but because it was time he put himself first, something he never has done." During his approximately four-month stay at Enhance Health Group, Mr. CONTRERAS was formally diagnosed with major depressive disorder, recurrent, moderate, and other sexual dysfunctions. He actively participated in treatment and was described by program

25

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

participants in terms reflecting genuine transformation. Ms. Belaski noted: "While in So Cal Ralph found God, he started attending church and slowly like a reptile shedding their skin so did Ralph. God was rebuilding him and healing him. All of a sudden he stopped judging people, because of the line of work he was in judging people and being alert came with it." Mr. CONTRERAS successfully completed the inpatient program in May 2025 and has continued mental health counseling and medication monitoring services through Barrie Lamonte in Sacramento. Treatment records reflect that he "has attended counseling appointments consistently and is focused during his sessions" and "appears to be motivated to develop greater self-awareness in order to lead a healthier and more productive life." He takes his prescribed medications daily and has maintained full compliance with all conditions of pretrial release for more than a year. Mr. CONTRERAS's spiritual transformation has been profound and genuine. He was baptized in May 2025, representing a fundamental commitment to a new life. Minister Julie Marsh, who worked with him during his treatment, attested: "Ralph C. Jr. has done all of the things I would expect to see in a changed person. He attends church regularly and takes part in the service, attends Bible study and adds to the discussion. What I have observed is a man with a right heart, doing the right things to be an overcomer in this life." His grandmother noted: "Since finding his faith, Ralph has grown even more. He attends church every Sunday, reads scripture regularly, and treats others—especially elderly women at church—with kindness, respect, and compassion." Mr. CONTRERAS has also demonstrated responsibility by obtaining full-time

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

employment with U.S. Cold Storage in November 2025 and part-time employment with Tallac Lounge beginning November 28, 2025. His supervisor, Raymond DeOllos, described him as "reliable," noting that he "has yet to miss a day unless requested off" and "is hard working and willing to put in overtime any time he has been asked to." Despite working for the company for less than a year, he "has already been promoted once and is always inquiring about further promotions." Character references submitted by family members and community members uniformly attest to Mr. CONTRERAS's genuine transformation. Sharon Boran, a Sunday school teacher and family friend, observed: "Ralph has demonstrated initiative to help in various situations. Ralph helps at home with caring for his grandmother and preparing meals for his family. He has volunteered to help with the announcements and readings for Sunday services. He has given his testimony at church regarding his life and changes that occurred since his arrest. He has approached everything with dedication, optimism and concern for others." His stepson, Rashaun J. Belaski, wrote movingly of the changes he has observed: "His character has changed so much from that day he was arrested and paraded around my block. He has opened up to me more often, talking about his feelings, his addictions, and what's happened in his career in CDCR, encouraging me to find help for myself or even talk to someone, and to not bottle it up and get an addiction as he did. When he was going to his addiction meeting, he was succeeding so much that he got his 90-day chip, marking three months of sobriety, which I was so proud of because it meant he was changing." Mr. CONTRERAS's rehabilitation is not performative or superficial—it

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

is profound, sustained, and genuine. He has confronted his psychological demons through intensive treatment, committed himself to ongoing counseling and medication management, transformed his spiritual life, maintained full compliance with pretrial conditions, and obtained meaningful employment. These extraordinary efforts demonstrate that he poses minimal risk of recidivism and that a reduced sentence would not compromise public safety.

**CONCLUSION**

RALPH CONTRERAS, Jr., is not a typical defendant in a child pornography case. He is a decorated public servant with no criminal history who developed severe PTSD, depression, and anxiety as a direct result of seventeen years of service to the State of California. He witnessed traumatic violence during his employment with CDCR, developed night terrors and suicidal ideations, and sought treatment through his employer but was unable to access care. His offense conduct occurred during the darkest period of his untreated psychological crisis and was driven by a compulsive addiction that developed as a maladaptive coping mechanism.

Since his arrest, Mr. CONTRERAS has taken extraordinary steps toward rehabilitation. He voluntarily enrolled in intensive inpatient treatment, where he was formally diagnosed and treated for his psychological conditions. He successfully completed the program and has continued outpatient counseling and medication management. He has maintained full compliance with all conditions of pretrial release for more than a year. He has obtained full-time employment and has been promoted. He has undergone a

SCHWEITZER & DAVIDIAN, P.C.
642 Pollasky Avenue, Suite 110
Clovis, California 93612
Phone: 559-322-1500

profound spiritual transformation, participating regularly in church, Bible study, and faith-based recovery programs. The advisory guideline range of 210 to 240 months does not adequately account for these extraordinary mitigating circumstances. A substantial downward departure pursuant to U.S.S.G. § 5K2.13, or alternatively a substantial downward variance pursuant to 18 U.S.C. § 3553(a), is warranted to ensure that the sentence imposed is "sufficient, but not greater than necessary" to achieve the purposes of sentencing.

Mr. CONTRERAS respectfully requests that the Court impose a sentence at the statutory minimum of five years (60 months) imprisonment, followed by a term of supervised release of not less than 180 months, along with the mandatory special assessments and restitution as required by law. Such a sentence would reflect the seriousness of the offense while properly accounting for his lack of criminal history, his years of exemplary public service, the causal connection between his service-related psychological trauma and his offense conduct, his inability to access treatment through CDCR, and his extraordinary rehabilitation efforts.

Dated: June 25, 2026.            Respectfully submitted,

                                 SCHWEITZER & DAVIDIAN, P.C.


                                 /s/ ERIC H. SCHWEITZER

                                 _____
                                 ERIC H. SCHWEITZER
                                 Attorney for Defendant,
                                 RALPH CONTRERAS, Jr.